Case number 155556, Diana L. Day-Cartee and others, versus Regence Bank and Henry Preston Ingram. Arguments not to exceed 15 minutes for appellants, 15 minutes to be shared by police court. I'd like to reserve one minute for reply. I'm Tom Burr Williams County, Tennessee bar. Um, this is an appeal of a motion for summary judgment granted by the trial court, uh, in this case. And, uh, so we can need to go back and talk about some of the facts. What we're trying to do by, um, by the court following the law of Tennessee to determine who has titled this property. The case was was brought originally by a trustee who had foreclosed and he had excess proceeds and filed in Chantry Court in Tennessee. The successful bidder at the foreclosure, Mr Ingram, filed a law for retainer action in General Sessions Court. We lost there, got appealed to circuit court in the circuit court. Judge Hamilton Gaydon noticed was appointed out to the other case. The interpreter case had already been appealed to the federal court and ordered the Cartees to try to consolidate these cases into one court. With that, we filed a third party complaint, uh, raising our defense that Mr Cartee did not have legal title to property under the deed of trust that was foreclosed. Uh, Mr Watson didn't right. I'm sorry, sir, saying that Watson didn't have good title. No, Mr Mr Ingram. Yes, that's true. Mr Watson did not have title and therefore Mr Ingram did not have time. Uh, the reason for that is this. The recording acts of state Tennessee determine who has title to the real estate and how you have to do that. They're in order for a document to be recorded. It has to be authenticated. And under the recording acts, there are certain things that have to go on for that doc to be authenticated to be eligible to be recorded. In this particular case, uh, Cartees had borrowed $1,000,000 from a bank in to them in Tennessee to sign. The authentication on the document is done by the notary public or two witnesses under the statute. Everybody uses notaries. Uh, and and there's two statutes to say, then how that authentication is supposed to be made. One statute says, if the authentication is being made within the state of Tennessee, here are the folks who have the authority to do the authentication. The other statute, uh, 103 66 22 103 says, if the authentication is being done outside of the state, here are the folks that have the authentication. This this document reflected on the on the authentication state of Alabama County of blank signed by Tennessee notary. So when that document is presented to the intake clerk in the registrar's office, the intake clerk has to look at this and say, this appears to this document was signed in the state of Alabama, but notarized by Tennessee notary. Does the Tennessee notary have legal authority to notarize a document that appears to have been if it's out of state, that authentication does not afford a Tennessee notary the the authority to indicate to notarize a document that appears to have been out of state. Here's the law. The law is that this court has to put yourself in the seat of that intake clerk in the registrar's office. All you can look at is the document. You can't look at all the peripheral information. You can't look at all the post information, whether or not they admit it was signed in Tennessee, not signed in Tennessee. They this court can't do this. I understand all that. But how does that help your client? It's my client was the owner of the property who was that was foreclosed, right? Uh, that it was their home worth 2.5 to $3 million. It brought a million a half. But doesn't this law only affect subsequent purchasers or lien holders? No, it affects whether my client's property was foreclosed. But your client, I mean, you admit that your client signed a deed of trust with Citizens Bank, don't you? Correct. And that deed of trust is valid as between you and Citizens Bank, whether it was properly recorded or not. It could have been totally unrecorded and you'd still be bound by the deed of trust your client. That's right, and we are. All right, and then the bank foreclosed. But the trustee in that deed of trust, you have to go record it. Okay, and so that would be that would give Regions Bank, who had the second deed of trust, perhaps a ground of fuss about, hey, we have priority over Citizens Bank's deed of trust. But Regions hadn't made that argument, has it? They have not, which I think is a mistake on their part. Oh, but that's their problem. No, it's my client's problem because they're taking my client's property. Uh, and and now the the punitive buyer at the foreclosure sale is trying to kick him out and an awful detainer. If your client's going to lose no matter what, because the deed of trust as between citizens and your client is valid, and therefore citizens have the right to foreclose on your client's interest. The aspect of the case is whether or not that was a commercially reasonable foreclosure sale and brought a proper amount of money under the loan, I think it's the loan case. I raised that. My client has a piece of property that's worth two and a half to three million dollars. They want to sell that property and satisfy their debts. The loans, and they also have some federal tax liens. If this property is sold for less than a commercially reasonable amount, which Mr. Mr. Ingram, the foreclosure buyer, will get a windfall of a million dollars that would otherwise be my client's property money to pay their debts. That's that's what we're trying to do. That's what you were litigating in state court, isn't it? Well, we tried to litigate it in state court, but Judge Gaten said, since the interpleader action filed by the trustee for the excess proceeds has been removed to federal court, Mr. Fowler, if I want you to consolidate these cases. I scratched my head. I said, just how am I going to do that, your honor? He said, you can figure it out. So what we filed was a third-party complaint bringing Mr. Ingram into the in the termination of title. Did you challenge whether the sale was in a commercially reasonable manner? Yes, but we never got that in state court. Judge Gaten told us. I know, but did you did you raise that issue? Was that issue litigated in the federal case? We never got there because we had a motion for summary judgment that was that they had title. Mr. Ingram had title of the property, which I think is a mistake. I think the trial court made a mistake. Okay, but did you did you respond to that by saying he doesn't have title because the sale is void because it was not done in a commercially reasonable manner? That's part of what we did, but we have to determine whether or not the trustee in the deed of trust had legal title and could transfer that. Okay, I think these are two different questions. One is whether the trustee had legal title to conduct the sale and transfer. The other is whether the sale was done in a commercially reasonable manner. Correct. Okay. We haven't gotten there yet because we've got the we have the first issue that he does have title. Okay, well I'm just not following you because I thought you said that all of that was raised in this case. Yes, it's in the third-party complaint. It's raised, but on the motion for summary judgment, the issue was just on title. Who has title of the property? So we never got to the commercially reasonable aspect. No, because you lost that and there would have been another issue pending that precluded a final judgment. That's correct, but we never got there. Okay, I'm sorry I'm not understanding you because if you had multiple reasons why your client should win and you lost on one, it wouldn't be a final judgment until you lost on all of them. So I don't understand unless I'm misunderstanding. Judge Saldrin treated it as a final judgment that that title was vested in Mr. Ingram and therefore made a disposition of the monies. Okay, your third-party complaint, or actually I'm not even sure why it would need to be a third-party complaint if the issue was excess proceeds. He was not a party in the excess proceeds. I know, I know, but did you challenge the sale? In the third-party complaint, we challenged the sale. Why would you not have raised the issue of the commercial reasonability of the sale as to, even in the interpleader, saying that, you know, it's all very nice that they want to put this money in the court, but the sale was not commercially reasonable in the whole sales void. We did in the answer to the complaint, the commercially reasonable interpleader complaint. Okay, and what did the judge rule on that? No. Then how can this be a final judgment, or did you raise it to the court? Yes, well, it's in there, yes, it is. The other aspect of this is, Mr. But you didn't counterclaim against the trustee. I didn't have to, Your Honor. I didn't have to. But isn't that, I think we're struggling with this commercial reasonableness, and if it's a trustee that sold it improperly, then isn't your remedy a counterclaim against the trustee? No, the counterclaim is against, is against the beneficiary of the trust. The trustee in the deed of trust is a stakeholder. He's not a real party in interest. It's a, it's a passive office. He has no, no duties other than to conduct the sale, but we never got that, we never got to that point. The reason is, they filed a motion for summary judgment to determine that it was a valid transfer of title from the trustee to Mr. Ingram, and that's where the... But it wouldn't be a valid transfer if it was commercially unreasonable. Well, the court would have to set it aside. The court would have to set that aside, and, and we haven't gotten there yet. What do you mean you haven't gotten there? Because the court, the court made this decision that, that the, the legal title to this property was vested in Mr. Ingram under, under... But in order to get to that decision, the judge would have had to decide it was a commercially reasonable sale. Well, that's what I think, but we haven't gotten there, Your Honor. I mean, with... Did you ask for reconsideration on the basis, hey, Judge, it's not, you know, you, in order to reach this decision, you hadn't considered the commercial reasonableness argument. Well, I... Did you do that? Yes, we did. I tried to do that, and yet... Well, you filed a motion for reconsideration or Rule 55? We filed a motion for reconsideration on the judgment that legal title was vested in Mr. Cartier. Okay, so... I mean, in Mr. Ingram. But you're not, and, and you're not even, on appeal, you're not even arguing, well, the judge never decided it was commercially reasonable. You're arguing, right? I mean... We're arguing that the first, the first issue is who has legal title to the property to determine... And your argument in that is that, let's go back to this, because you see, there's a statute, and it says that to be valid notice against subsequent purchasers or lien holders, it has to be properly acknowledged. Correct. Okay, but that doesn't affect the relationship of the more, the, the, the lender, and I'm used to using mortgage terms. Okay. All right, so, you have this defective acknowledgment, you have a subsequent recording that fixes the acknowledgment, right? No, it did not fix it. It failed. Because your client didn't sign the revised thing, that's your argument. The statute is, if there's a defect in the acknowledgment, I'm out of time, if there's a defect in the acknowledgment, that's the notary's acknowledgment, and there's a separate set of statutes that says what the notary has to do to cure the acknowledgment. That was not done in this case. And what does a notary have to do to cure an acknowledgment? They have to get the executed, they have to do a new acknowledgment, it has to get recorded in the registrar's office, and so that becomes the time at which the document is recorded. Okay. That was not done in this case. And if somebody has, if it, if a subsequent lender has actual notice, it doesn't matter, right? You can, you can if a subsequent lender has actual notice of a prior lien, a prior lien, then the issue is, what's, what's the priority? Who has the priority? And that statute, which is the race notice statute, says that the court has to decide that, a court with equity jurisdiction has to decide that. Has to, but what's, what is the, the law? If there's actual notice, does it matter? The statute says full notice. It doesn't say actual notice, whatever full notice means. What does the case law say? The case law is that, that if they have notice, then, then the other recording is valid. The problem is the other recording is void. It's, it's the first recording of the first bank, the first deed of trust that was foreclosed is void. The, the acknowledgement was defective, and therefore it's void. They tried to correct it. They did not correct it properly. It's therefore void. That's what the Marsh case. Okay, so then the answer, so the answer to your, to my question is, it doesn't matter that they have actual notice, is what you're saying. Not if it's void. That's correct. All right, so let's go back to Judge How does this benefit you if the, you were in default, Regent doesn't assert this right? So how does all of this benefit you? Or stated differently, how can you assert, it's certainly valid as between you and the statute that requires, that, that determines the validity of the filing. If they're not asserting this, why is it that you should be able to assert it? Because it's not a commercially reasonable sale. My client's got an asset worth two and a half to three million dollars. Isn't it a, a prudential standing issue? Don't you have to have standing in order to raise the claim? And do you in fact have prudential standing here when Regents does not raise the issue and you are bound to citizens no matter what? Because you have a separate contractual obligation to citizens that you cannot get around. We have this. We have standing because the punitive buyer at the foreclosure sale is filing an unlawful detainer action to kick my client out of their house, which was done in March of 14th. Under a, under a... But the standing has to do with the rights of the people... The challenge, the challenge that they have title, that he has title. We have standing to challenge that he has title because the deed of trust that was foreclosed was defective. Really your, your basis of standing would only be the commercially unreasonableness allegedly of the sale. That's really your only... Oh, counsel, let's say they have the second mortgage, okay? And you weren't paying it. They could foreclose. They could foreclose? Right. And then the question would be who, who would be in first position? Would the, the Alabama Bank be in first position or Regents Bank? Our position is Regents Bank is in first position. And a junior lien under the law of the states of Tennessee can foreclose. That's correct? That's correct. So, so how does this change the outcome? Changes the deal. Why? That you still lost your interest with respect to citizens. That what, what would have happened, right, is that the worst that it could have been is that Ingram would have taken the property subject to Regents lien. But you'd be out of the picture. Well, I'm not sure I'm following you on it. Mr. Cart, Mr. Ingram, the buyer in the defective deed of trust, the, the trustee of that deed of trust did not have legal title of property. It was not properly acknowledged. Therefore, it's not eligible for recording. Therefore, under the Marsh case and the Krim case, it's void. Okay. Okay. Stop for a second. Okay. So let's say, no, no. Let's say there was no second lien. Okay. Are you saying Regents, are you saying that citizens could not foreclose because it wasn't properly acknowledged? You're saying they could not transfer title, the trustee in that deed of trust could not transfer title. Okay. Well, then, then I totally don't understand because I thought it was clear that as between your client and citizens, citizens had the right to foreclose on the deed of trust and transfer title. Let's say Regent was not in the picture. One lien, one deed of trust, defective acknowledgement, hasn't been paid. Can they foreclose? Yes. And can that, can he transfer title? Yes. Okay. So the problem has nothing to do with your client. It has to do with the second lien holder. Which is that the first deed of trust that was defective under the race notice statute when the Regent's bank deed of trust got filed, that deed of trust is in first position. Not the deed of trust that was foreclosed. But a junior deed, a junior... It wouldn't be junior. They would be in first position. Okay. It's our view today that today, the trustee in the Regent's bank deed of trust has legal title of this property. That's our view. So... That hadn't been foreclosed. Okay. That has not been foreclosed. Okay. Let's say... Let's do this differently. Okay. Let's say it had been recorded properly. Okay. And Regent's was a valid second encumbrance. Right. Your client stopped paying Regent. Okay. Regent forecloses. Okay. Ingham buys... Ingham bids. So Regent... So then Ingham would then take Regent's interest subject to citizen's interest, right? Correct. Unless there was sufficient money bid to pay it off, then they would pay it off. He would pay it off. Okay. And then you'd say, well, Ingham couldn't kick them out citizens as long as they're still paying citizens, basically. If the second deed of trust... If Regent's was in fact the second deed of trust and the second deed of trust was foreclosed and Mr. Ingham bid it in, then he would have to assume the debt or else they would foreclose if it was a valid deed of trust. He would what? I can't... He would have to pay the first note holder. Mr. Ingham would or else he wouldn't have the property. That's right. He'd have to pay the first note off. So if Regent's is willing to take less of what they're owed and citizens gets what it's owed, how does that leave a claim for you under these statutes? Because 6624101E and F apply, isn't that correct? Well, that's the question. That is the question. The first deed of trust is defective and it was not properly cured. The acknowledgement was not properly cured and therefore it was not effective. Under the Marsh and Krim case, Tennessee Supreme Court says it's void. It's absolutely void. That deed of trust and that recording is void. Void. That's what... Only as to subsequent... No, it's void. It is void and that means the trustee in the Regent's deed of trust has legal title because under the race notice statute, it's dated later, recorded earlier because the other one's not recorded. That's what the race notice statute said prior to 2005 was that it was okay as long as there was quote substantial compliance. No, not on these... Not on the issues of authentication. That's what the Marsh case and the Krim case says in the Tennessee Supreme Court. If it is not compliant with the authentication, the requirements of the authentication statute, then it's void. It's void. Marsh case was there was no... The authentication statute says the notary's gotta have a seal. There was no seal on the notary. Tennessee Supreme Court says that's all we have to have. It's void. It's void. Is it void or does it become the second... No, it's void. With what consequence? Void. They have no right in the property. No right in the property at all. It's right because there's a second deed of trust that is... They have no notice rights in the property. They have no right... But you have a separate contractual obligation with them, correct? They have a contractual obligation. They still owe the money, but they have no... But the first deed of trust has no authority to foreclose. Okay, so you're saying that there's no security interest. There's the underlying debt, but no security interest. No security interest if it's defective. Not even after the other people. No. Void. Okay, so what case says that? Marsh, Tennessee Supreme Court case of Marsh, Tennessee Supreme Court case of Krim. Spell it. Krim, C-R-I-M. Both were referrals from the bankruptcy court to the Tennessee Supreme Court. And both of those say that there's no property interest at all. There's no security. No security. It's void. Not even a second. Not even a second. Okay. Void. Okay. Therefore, when that deed of trust was foreclosed, that trustee has no legal title because there was a second deed of trust. Thank you. Your time's up. Thanks. Your Honor, it's David Anthony on behalf of the appleee Henry Preston Ingram. We also have a second applee on behalf of Regions Bank, Aaron Nash. As you'll recall from the court's record, Mr. Nash adopted and incorporated Ingram's brief. And so today we've divided the argument accordingly. I anticipate taking 13 minutes, and he'll have two minutes at the end. But of course, if the court has any questions for them in the interim, I'll say this as a start. In all due respect, the appellant's argument is simply incorrect. With respect to... I'm gonna hit some of the judge's questions first. Judge Gilman, you said they lose no matter what. That's exactly the case here. There's no conceivable situation in which they retain this property, nor get any equity from this property. The only proof that's ever been in the record was the tax appraisal that said this property was worth $2.475 million, and the admitted liens on the property, the admissions from both the appellants as well as the other parties, showed liens, not counting the Citizens Bank lien that was foreclosed on. Those liens are $7.8 million. It's actually more. With the Citizens Bank, the foreclosed lien, it's more than $9 million of total liens on this property. The law is, as between the borrower and the lender, even an unacknowledged deed of trust is valid and effective. It doesn't have to be recorded even. It could be in the bank officer's desk. He forgot to record it. It's still effective. They can do a foreclosure. The issue is priority in that situation. I'll say that... Okay, the law is clear that it's not just the debt that's valid, but the property interest is valid. It is. It is. And so which case says that? Well, the statute says this. All of the instruments mentioned in 6624101, all the recordable instruments, shall have effect between the parties to the same, their heirs and representatives, without registration. It doesn't have to be recorded. There are valid ads between those. As you know from Article 9, however, you can get a grant of a security interest as between your lender and you, but the way you get priority over other creditors is you record it. It's a priority dispute. That's what we have here today. Their greatest weakness in this case, aside from the basis that Judge Schrager used to rule on, I'll start with the worst case scenario. In all the cases we will talk about today, it's an action brought by, invariably, a bankruptcy trustee. Because under the bankruptcy trustee's strong arm powers, under 11 U.S.C. 544, the bankruptcy trustee has no notice of recorded documents. He takes the strongest judgmentally and creditor view of these. So all of these cases came up in bankruptcy court. I'll say this, and this is their strongest weakness. In no Tennessee state case or federal case construing Tennessee law has a borrower ever raised these types of notary defects. That's because the statute, the clear intent of the borrower and the lender, they can't raise these issues. It's binding as between them. I guess he could raise the commercial unreasonableness of the foreclosures. What about that? I wanted to talk about that. That is raised in a throwaway line in the answer. Judge Schrager set dispositive motions. The appellants did not attend the initial case management conference at which the issues were set in the case. And Judge Schrager set a significant priority lien entitled to payment of the money. And then after the dispositive deadline is when the appellants showed up and filed their third-party complaint. The third-party complaint, if it had issues on, I know their answer alleged, they cited a case called Cold Mountain, which is case law in Tennessee, about the adequacy of foreclosure bid prices. That has since been codified. And this is not in my brief, but this has come up now. This is not in their brief either. They did not allege the commercial unreasonableness in their appellate brief. But Tennessee code annotated 35-5-118 is the codification of that. This relates to, and the title of the statute is, deficiency judgments. And the commercial reasonableness, that statute sets a standard saying that the bid at foreclosure sale cannot be materially less than the market value. And there's been a lot of litigation in Tennessee state courts as to what materially less means or what not. But I'll say this, that line of cases, and again, this is in the brief, those relate only to deficiency judgments. That does not relate to what they're doing here. So they alleged it was a commercial reasonableness and cited the Cold Mountain case in their answer. But when Judge Trauger was presented with this third-party complaint, she set a later dispositive deadline. These title issues are in before her. So she set a dispositive deadline for both Ingram and the appellants to brief all the issues that go to title. The commercial reasonableness of the sale was not raised. There's no affidavits with respect to the bid price was insufficient. They do have affidavits saying that we thought the value per the tax card was 2.4, but that wasn't litigated. Counsel says we never got there. They never raised it. The arguments that were before the court on summary judgment related only to this issue of title, whether this deed of trust with the typographical error and the notary. So let's get to that. I mean, it's not properly acknowledged. Well, Judge, I'll say this. Judge Trauger, who had years of experience on the bankruptcy bench, has seen these issues. And prior to 2005, as I said, these were raised by bankruptcy trustees. I'll say this. The counsel was incorrect about the race notice. He said, well, the competing priority creditor has to have full notice. No, it's actual notice. And that's why, in most situations, you don't have junior creditors raising these issues, because they have to prove that they didn't have knowledge of this. Their title search didn't show it. Invariably, these title searches show this, because it's properly registered. Our affidavit that's in the record showed that this was properly recorded under the borrower's names. The only issue was the notary defect. OK. So explain that to me. They're always going to have actual notice because it's recorded. But it's defective. That's why none of the cases that are cited on this issue, they're always in bankruptcy court. Or if they're in state courts, because a bankruptcy court is engaged in what Judge Gilman referred to as a substantial compliance test. What happens is, when the trustee raises this issue, then the bankruptcy court has to see whether... Because the Tennessee Code has a savings statute. If the intent is clear, if the text shows an intent to grant a lien security interest, it may pass muster. And so prior to 2005, when faced with these issues, the litigation turned into the substantial compliance test. And in my brief, I cite both cases that say, this substantially complies and this doesn't. And it basically looks at the severity of the issue. And I'll say this, the cases cited by the appellants are from 2000 and 2002. No cases are cited after 2005 because of the passage or enactment of TCA 6424101E. That stopped this line of cases dead in its tracks. That new statute, which is what and how Judge Trauger ruled on this case. She said the language is clear and unambiguous, that if a deed of trust has some sort of typographical error in the notary acknowledgement, but if it's accepted for registration by the register, it'll be deemed valid for all intents and purposes under Tennessee law. I think, frankly, on that particular point, I think Judge Trauger may have been in error, though, because as I read F, except E, I mean, in this case, both the citizen's deed and the region's deed were recorded prior to 2005. Well, the issue is this. F says that the relative priorities of conflicting claims to real property, if they were established at a time prior to June 6, 2005, the law applicable to such claims at such time shall determine their priority. And to go back again, so the only other case after 2005 was enacted, the only other case precedent we have was from 2007, the N. Ray Hickman case. And in that case, the language, the way it's construed and the way it's written is the 2005 statute applies to any documents that are of record, meaning they had been recorded prior. And the case confirmed that. And then if there are disputes between two pre 2005 prior disputes, it's up to those par... It does. And I'll say this. And it's a financial compliance test. And I'll say this. That's a harder argument, frankly, if regions had raised the issue. They never raised the issue. Region's stance has been that they've always had a second mortgage. They're in junior position. They did not participate in any way on the issues of title. They did not contest our argument, which is how Judge Trauger ruled. I'll say this. We would have beaten regions, both on the actual notice provisions, because there would be litigation between Ingram and regions. Through discovery, we'd get copies of their title search and show. And again, that's why in the case law, we don't have anything creditor versus creditor disputes, because it's hard to show that they did not have actual notice. Okay. So there... Which is the case that says that even with the defect in the acknowledgement, actual notice destroys any reliance on the defect. It's a statute, Judge. And because this wasn't... This is not something that the appellants necessarily argued in theirs. This is... I just came prepared to argue it. What I'm citing is... I know you already quoted the statute, but is there a case law that says that? That applies it in the context of a defective acknowledgement. With this not being raised by regions, I'll have to supplement, Judge. I don't have necessarily the case on this. I will say that in the context of defective notaries, this has never been raised by competing lien holders, and we could certainly supplement that, Judge. I'll say this, it wasn't raised here. And with respect to all the lien holders that are behind Ingram, regions, the IRS, none of the parties challenged priority. Their only position in their answers, and the only party who filed the dispositive motion with respect to the proceeds, was a region saying, we have a second mortgage, we just want the money. And so... They got their 281,000 or whatever it was. In fact, it was actually dispersed. The appellants failed to appeal that portion of the order, and so the district court dispersed the proceeds to regions. It sounds like even if the sale were commercially unreasonable and it was worth the 2.4 something million that the tax assessor said, Ingram still wouldn't... I mean, not Ingram, the Cartes still wouldn't have gotten anything, right? If there was $8 million or so of liens against this. The record shows that if you count up the total of the liens, they dwarf the amount of even the tax card appraisal. Again, we don't have any records saying it's worth $3 million. Mr. Bartorf, counsel for appellants, appeared at the foreclosure sale and bid 13 times. The Cartes were actually the next highest bidder at the foreclosure sale that was allegedly defective. But I will say this, there's nothing in the record, nor in the motion for summary judgment pleadings filed by the appellants. Again, they did not just respond to Ingram's motion, they filed their own motion, and they did not raise the commercial unreasonableness issues despite a dispositive motion deadline that had been pending maybe seven months at that point. This case sat around for a good long time. We didn't have fact discovery on these factual issues alleged by the Cartes with respect to commercial reasonableness. We didn't have appraisal fights or whatnot. And again, I'd say under Tennessee's substantive law, TCA 35.5, 118, commercial reasonableness doesn't necessarily go to the legitimacy of the sale, it's a deficiency judgment. And whether citizens had the ability to collect a deficiency, here they didn't. Based on the text of the deed of trust, they simply paid the money and filed an interpleader action and then paid the money into the court. These were properly filed claims if they had raised them against the foreclosing trustee. And Judge Trance, you raised that issue. What happened was while the appellants were not participating in the case, they didn't attend the initial case management conference, they didn't file an answer until eight days prior to the regent's dispositive motion date, the trustee filed a motion  from the action. And so they should have raised these as Rule 13 counterclaims against the trustee who conducted the allegedly deficient sale. They should have brought in Citizens Bank, but instead what they're doing is they're carrying the torch for regents in an argument that regents simply doesn't support nor any other lien holder supported. And in the lack of an argument over commercial reasonableness, in the lack of this race notice argument at the discord level, Judge Trauger ruled pursuant to 66-24-101-E based on the undisputed facts and the clear and unambiguous language of the statute. It was, frankly, a quick and decisive ruling that these applied because she had no contrary arguments or facts in the record at the summary judgment level. You're talking about when she dismissed the trustee? Not the trustee, when she ultimately ruled in her final ruling because those other issues weren't properly before her in the pleadings, in the summary judgment pleadings filed by the appellants. I understand the sale, the commercial reasonableness of the sale wasn't before her, but the race notice issue was before her, wasn't it? Well, no parties had raised that. Regents had not participated to object to the sale in any way. They were the party to have standing on this. I see my time is up. Let me just educate the court on one issue. The appellants, in a variety of circumstances, had affirmed the validity of this. In a Chapter 11 bankruptcy, Ms. Cartee entered into an agreed order signed by Judge Harris in a bankruptcy court in which the lien was valid and unavoidable and properly perfected. They, prior to the foreclosure, filed a state court lawsuit against Mr. Watson, which was dismissed with prejudice. Well, raising... I don't know exactly. I think it was sale notice issues. It was dismissed with prejudice. Judge, I don't think they have issues to... They don't have standing to raise these issues, and they simply weren't before the court. The race notice issues, Regents never alleged, nor is there any allegation in the record that they didn't have it. Thank you. I'll turn it over to Mr. Watson. Yes. May it please the court, Aaron Nash, on behalf of Appellee Regents Bank. Just very briefly, with the court's permission. The fundamental matter here, with respect to Regents Bank, is merely the disbursement of the surplus proceeds following the final foreclosure sale. As reflected in the record, it's undisputed that Regents Bank had a properly recorded deed of trust with a attaching both the real property and the proceeds therefrom. The sale was final. The line was in default. Regents Bank has the highest priority claim of all the defendants, same in the underlying interpleader action. Okay, why didn't you have a interest superior to citizens, given the acknowledgment? Well, based on everything Mr. Anthony said, and all the other issues with this case, from bankruptcies, the Hickman decision, TCA section 6624101E, I can't speak directly for Regents Bank, but it might have been their business judgment not to pursue that, given the nature of this case and how long it had been going on. Basically, they thought if they did contest the priority of citizens, they would probably lose. I assume that's why they didn't, they chose not to contest it. Theoretically, yes, your honor. What is the debt to you originally? $400,000. And following the surplus proceeds that were dispersed by the court, the debt was reduced. The Cartes obviously have never asked for that money back, because they got a credit to the debt owed to Regents Bank. An order was issued by the court dispersing those funds to Regents Bank, which was not a part of this appeal, was not stayed pending this appeal, and more or less because it wasn't in dispute that Regents line was in default, they did have a timely, perfected lien. So like the other creditors, you have an unsecured interest remaining. Correct. And more or less the issue before the court and the interpleader may be moot as to Regents Bank, because the facts aren't disputed as to their right to those surplus proceeds. Those proceeds has been dispersed and Regents has those proceeds in their possession. Unless there are further questions, I think that's it, your honors. Thank you. Thank you, your honor. Let me very quickly say, counsel, my representation I appeared 13 times and bid 13 times at the foreclosure sale for the Cartes. I have filed a declaration that's in the file that says I did not represent the court, the Cartes, at the foreclosure sale. I represented another party, not the Cartes. I did not represent the Cartes until Mr. Ingham filed the unlawful retainer action. At that point in time, the Cartes hired me to defend the unlawful retainer action. Now, the answers to all of this is you have, I'm a real estate probate and trust attorney, you have to follow the title to the property. That's how you do this. Now, all of these other things make no difference. Whether they went to bankruptcy court, what they signed in bankruptcy court, it makes absolutely no difference. It's irrelevant. All of that was before this took place. But it was after those documents were signed. When you follow the title, you follow the Marsh case, you follow the Krim case, legal title that to the original deed of trust was, it's void. Void cannot be resurrected. That's what Marsh says and that's what the Tennessee Supreme Court says. So there is no title in the trustee, in the deed of trust that was foreclosed. How does that, if your client was owed, had liens of six million, eight million, anything way beyond two and a half million, how does this help your client? This helps my client because here's how it's already helped my client. They've already got two hundred, why didn't we object to Regents Bank getting their money? Because they owe them. My clients want to sell this house for the money that it's worth and they want to pay their debts as far as that will go. That's what they want. That would require a challenge of the commercial reasonableness of the sale. Now, with all due respect to Mr. Anthony, after this, after this was, the motion was granted, or after the motion was granted, they filed a motion in state court that he makes reference to in his brief that they have a contract to sell the property for two point eight million dollars and they want the trial court to authorize them to go ahead and sell that. The trial court said you can do it but you can't disperse the money. So they haven't paid any money in. So there's 2.8 million, not 2.4 million, that their own client, Mr. Ingram himself, got a contract to sell it for. I don't think they've closed the deal, I don't know why. It's 2.8 million, not 2.4. Okay, but you have seven million dollars in liens on the property, what difference does it make? Well, it makes this difference. There's a million dollars, or a million two, that my client has to apply to that debt that they otherwise would not have. And they may be able to sit down with the IRS and say, under the circumstances, with the attorneys they've got representing them with the IRS, we'll take it. Now, they make reference to another debt. There's another debt, it's not in the record, but I'll, so the court will know, there was a judgment for completely, that they paid. So the only big debt is the IRS debt, that's the only debt. So they have the benefit of the money, that's why they have standing, Judge Stranger, that's why this is their property, their asset, to sell this asset to pay their debts. And but for, but for the, the Judge Trogger, I think erroneous ruling, that Mr. Ingram has title of the property, we could have another, we could have another. Thank you. Thank you very much. Welcome to meeting place. Enter the meeting password, followed by the pound key. That meeting password is not recognized. Enter the meeting password, followed by the pound key. That meeting password is not recognized. Enter the meeting password, followed by the pound key. At the tone, please speak your name or location. When finished, press the pound key. Brian Crutcher with the Sixth Circuit Court of Appeals in Cincinnati. Brian Crutcher. To reach assistance, press 0. To enter a breakout session, press 1. To hear a roll call, press 2. To dial a phone number or get all missing invitees, press 3. To mute your phone, press 5. There are 4 meeting participants. Last speaking, an unidentified participant. To hear a list of the participants, press 1. To return to the meeting, press the star key. Hello, this is Brian Crutcher with the Sixth Circuit Court of Appeals in courtroom 403. Is counsel Piston and Freedman present? Michael Piston is here. Nancy Freedman for the Attorney General is here. Thank you, counsel. We will call the case and Mr. Piston will be presenting his arguments first. We have recorded, previously recorded, five minutes for rebuttal time. Is that correct, Mr. Piston? Yes. We will factor that into your total time.